# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 21-03070-01-CR-S-BP |
| ) | |
| JEFFREY A. WINDER, ) | |
| ) | |
| Defendant. ) | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant Jeffrey A. Winder has been charged with possession of a controlled substance and unlawful transport of firearms. He filed a motion to suppress, (Doc. 17), arguing that law enforcement officers unlawfully searched his possessions. The Honorable David P. Rush, United States Magistrate Judge, held a hearing on September 20, 2021, and subsequently issued a Report and Recommendation ("R&R") suggesting that the Motion to Suppress be denied. (Doc. 31.) Defendant filed a timely objection. (Doc. 34.)

The Court has conducted a *de novo* review of the R&R as required by 28 U.S.C. § 636(b)(1). In particular, the Court has reviewed the parties' submissions before the hearing, the transcript and exhibits from the hearing, and Defendant's objections to the R&R. Having conducted this review, the Court adopts the Report as the Order of the Court and denies the Motion to Suppress; the Court's discussion is intended to augment, not supplant, Judge Rush's recommended findings and conclusions.

## I. BACKGROUND

In the early hours of the morning on March 1, 2021, Defendant and a woman named Nikki checked in to Hood's Service Center Hotel (the "Hotel") in Bois D'Arc, Missouri. Defendant used

his identification and credit card to secure Room 209. Later in the morning, Stacy Harcombe, an employee of the Hotel, asked Gary McCullough, the Hotel manager, whether she should clean Room 209 after knocking at the door and receiving no answer. He told her to do so, and upon entering the room, Harcombe found that the room was empty and the beds, towels, and shower had not been used. Harcombe informed McCullough of this. Around 11:00 a.m., McCullough entered Room 209 and also noticed that the box spring of one of the beds had been moved. He walked over to realign the bed and noticed a bag under the box spring. McCullough thought the bag might have been left by a previous guest, so he extracted the bag from under the bed and opened it. Inside, he saw a plastic container packed with what he believed to be methamphetamine.

McCullough left the bag where it was, left the room and locked the door behind him, and called 911. McCullough testified at the hearing that when he finds evidence of illegal activity in one of the rooms at the Hotel, he considers the room rental agreement "null and void," and the guests evicted, per hotel policy. Once police officers arrived, they requested permission to enter the room, and McCullough agreed and unlocked the door. One officer entered the room and saw the opened bag, where he observed the methamphetamine, and also spotted what he believed was the bottom of a pistol in the bag. He removed the gun and disarmed it. Then, the officers deployed a K-9 drug-sniffing dog, which alerted to the bag.

Based on that evidence, law enforcement officers subsequently obtained a warrant to conduct a full search of the room, which they obtained and executed later that afternoon. After that occurred, McCullough rekeyed the room and locked it. Defendant and a female returned to the hotel that night, and when they tried and failed to enter the room, the female asked McCullough what had happened. McCullough responded that police had searched the room pursuant to a warrant. The woman and Defendant left shortly thereafter, but police officers stopped them in the

2

parking lot and removed them from the vehicle. Officers subsequently discovered a handgun in the vehicle and bags of methamphetamine under the passenger seat.

## II.  DISCUSSION

Ordinarily, a hotel guest retains a reasonable expectation of privacy—and is thus protected against warrantless searches—in his rented room. *E.g., United States v. Rambo*, 789 F.2d 1289, 1295 (8th Cir. 1986). But "[j]ustifiable eviction terminates a hotel occupant's reasonable expectation of privacy in the room." *United States v. Molsbarger*, 551 F.3d 809, 811 (8th Cir. 2009). In the R&R, Judge Rush concluded that Defendant was "evicted" from Room 209 as soon as McCullough discovered the methamphetamine. (Doc. 31, pp. 9–10.) This conclusion turns in part on a Missouri statute, MO. REV. STAT. § 315.075(3), which provides that an "operator of a hotel may eject a person from the hotel and notify the appropriate local law enforcement authorities" if the "operator reasonably believes that the individual is using the premises for an unlawful purpose."

Defendant does not dispute that McCullough had reason to believe that Defendant was using the room for an unlawful purpose, and thus, that he had authority to evict Defendant under the statute. (Doc. 34, p. 4.) But he argues that eviction is not automatic under § 315.075(3), because the statute provides only that an operator "may" evict a person he suspects of unlawful activity. (*Id*. at p. 5.) And Defendant contends that McCullough did not "eject" him before the law enforcement officers searched his room, in part because Defendant was not on the premises at the time. (*Id*. at p. 6.)

The Court disagrees. After McCullough discovered the bag, he exited the room, locked the door behind him, and called the police. The Eighth Circuit has held that an occupant has been "evicted" from a hotel room once a hotel manager makes the decision to remove the occupant from

3

the room, even if the removal has not yet occurred. In *United States v. Peoples*, for example, the hotel operator summoned the police and gave them a key so that they could help him evict the occupant from the room; the police subsequently entered and removed the occupant. 854 F.3d 993, 995 (8th Cir. 2017). The Eighth Circuit held that the occupant's privacy rights had terminated when the "motel clerk handed [the police officer] the key," even though the occupant was still in the room at the time. *Id*. at 996; *see also Molsbarger*, 551 F.3d at 812 ("Any right [the defendant] had to be free of government intrusion into the room ended when the hotel manager, properly exercising his authority, decided to evict [him] . . . ."); *Young v. Harrison*, 284 F.3d 863, 867 (8th Cir. 2002). The fact that some time elapsed between McCullough's decision to expel Defendant from the room and the moment when he rekeyed the room, physically barring Defendant from entering, is irrelevant—locking Defendant out of the room is a sufficient, but not necessary, condition for eviction. (Doc. 34, pp. 8–9); *see also United States v. Allen*, 106 F.3d 695 (6th Cir. 1997).

Because "control over the hotel room [had] reverted to the management," i.e., McCullough, after he decided to evict Defendant, *see Rambo*, 789 F.3d at 1295–96, Judge Rush found McCullough's consent for the officers to enter the room justified the warrantless search. (Doc. 31, p. 14); *see also United States v. Williams*, 521 F.3d 902, 906 (8th Cir. 2008) ("Consensual searches do not violate the Fourth Amendment . . . ."). Defendant contends that McCullough's consent was ineffective, (Doc. 34, p. 9), but this claim depends on Defendant's argument that had not yet evicted Defendant from the room, an argument the Court has already rejected.

Finally, Defendant argues that even if the police officers had legitimately entered Room 209, their decision to search the bag was improper, because they had no reason to believe it contained anything illegal. (Doc. 34, p. 11.) In particular, Defendant contends that the evidence

4

at the hearing did not clearly establish that the bag was open when the officers entered, and thus, that the methamphetamine and pistol butt were not clearly visible. (*Id*.) The Court disagrees. The testimony at the suppression hearing established that McCullough informed the officers that he saw "a brown bag," (Doc. 25, p. 48), and that he "thought it had drugs in it." (*Id*. at p. 50.) Police have probable cause to conduct a warrantless search of luggage where "given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Bettis*, 946 F.3d 1024, 1030 (8th Cir. 2020) (citation omitted). The Court finds that McCullough's statement to the officers would have led a reasonable person to believe that there was a fair probability that the bag contained contraband; thus, it has no need to address whether the bag was open or determine if the plain view doctrine applies.

### III.  CONCLUSION

For the foregoing reasons, the Court adopts Judge Rush's R&R, and **DENIES** Defendant's Motion to Suppress. (Doc. 17.)

**IT IS SO ORDERED.**

DATE: December 15, 2021

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT